**Appellee's Motion for Rehearing Denied; Appellee's Motion for En Banc Reconsideration Granted; Memorandum Opinion and Judgment of December 21, 2018, Withdrawn; Reversed and Remanded and Majority and Dissenting En Banc Opinions filed October 29, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00811-CV

## MARIA CHRISTINA GOMEZ, Appellant

## V.

## THE CITY OF HOUSTON, Appellee

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2013-59953**

## EN BANC DISSENTING OPINION

The en banc court grants the City of Houston's motion for en banc reconsideration, withdraws the panel opinion, and issues a new en banc majority opinion and judgment that do not vary in result from that reached by the original panel. Like the panel on original submission, the en banc court holds in a comprehensive majority opinion that the trial court erroneously granted the City's

plea to the jurisdiction because the City did not conclusively establish its officer's good faith and, separately, a material fact issue exists as to whether the police officer acted recklessly under the "emergency response" exception to the waiver of immunity under the Texas Tort Claims Act (TTCA). Regrettably, I part ways with the majority on the latter point and conclude that this record does not contain a scintilla of evidence that the responding officer took any challenged action with conscious indifference or reckless disregard for the safety of others. For that reason, I would hold that no genuine issue of material fact exists on the emergency response exception, and that the trial court correctly granted the City's plea. I would affirm the judgment.

Under the doctrine of governmental immunity, political subdivisions of the State, including municipalities, cannot be sued and held liable for the actions of their employees unless a constitutional provision or statute waives immunity to suit and from liability. *See*, *e.g.*, *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994); *Mem'l Villages Police Dep't v. Gustafson*, No. 01-10-00973-CV, 2011 WL 3612309, at *2-3 (Tex. App.—Houston [1st Dist.] Aug. 18, 2011, no pet.) (mem. op.); *see also* Tex. Civ. Prac. & Rem. Code § 101.025 (immunity to suit waived to extent of liability created by TTCA). The TTCA waives governmental immunity from suit and liability in certain limited circumstances, including when, as here, a party alleges property damage or personal injury arising from the operation or use of a motor-driven vehicle. Tex. Civ. Prac. & Rem. Code §§ 101.021, 101.025; *see also Dallas Cty. Mental Health Mental Retardation v. Bossley*, 968 S.W.2d 339, 342-43 (Tex. 1998). Exempted from this waiver of immunity, however, are claims included within the TTCA's "emergency response exception." Tex. Civ. Prac. & Rem. Code § 101.055(2); *Harris County v. Spears*, No. 14-17-00662-CV, 2018

2

WL 4571841, at * 2 (Tex. App.—Houston [14th Dist.] Sept. 25, 2018, no pet.) (mem. op.). Under that exception to immunity from liability, the TTCA does not apply to a claim based on a governmental unit's employee's allegedly wrongful conduct if that employee, while responding to an emergency call or reacting to an emergency situation, acts in compliance with laws or ordinances applicable to the emergency actions or, absent such laws or ordinances, the employee's actions are not taken with conscious indifference or reckless disregard for the safety of others. Tex. Civ. Prac. & Rem. Code § 101.055(2); *see also City of San Antonio v. Hartman*, 201 S.W.3d 667, 671-72 (Tex. 2006); *Tex. Dep't of Public Safety v. Little*, 259 S.W.3d 236, 238 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The exception is designed to prevent second-guessing of split-second and time-pressured decisions that public safety personnel must make. *See City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 699 (Tex. App.—Austin 2005, no pet.).

Among other arguments in its plea to the jurisdiction, the City asserted that the TTCA did not waive the City's immunity from liability and from suit because the emergency response exception applies. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021, 101.025, 101.055. The City argued that Officer Simmons was responding to an emergency situation, that he complied with any applicable laws or ordinances, and that his conduct was not reckless or consciously indifferent. In support, the City attached among other evidence the affidavits of two police officers, including Officer Simmons. Once a defendant invokes the exception, the plaintiff bears the burden to establish that the exception does not apply. *See Hartman*, 201 S.W.3d at 672; *Quested v. City of Houston*, 440 S.W.3d 275, 285 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Little*, 259 S.W.3d at 238-39. Thus, Gomez was required to present evidence sufficient to raise a fact issue that:

3

(1) Officer Simmons was not responding to an emergency call or reacting to an emergency situation; (2) Officer Simmons's actions did not comply with the laws or ordinances applicable to the emergency situation; or (3) Officer Simmons's challenged actions were taken with conscious indifference or reckless disregard for the safety of others. *See Quested*, 440 S.W.3d at 285; *Little*, 259 S.W.3d at 238. Here, the inquiries under (2) and (3) above are essentially identical because the only law Gomez argued Officer Simmons violated is Texas Transportation Code section 546.005, which provides that a driver of an emergency vehicle is not relieved of "the consequences of reckless disregard for the safety of others." Tex. Transp. Code § 546.005(2); *see also City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998).[1] Accordingly, the emergency response exception applies unless Gomez presented some evidence that Officer Simmons was not responding to an emergency or that his actions showed conscious indifference or reckless disregard for the safety of others.

My colleagues in the majority conclude that Gomez met her burden by presenting some evidence of recklessness, citing three fact disputes that they say together rise to a level sufficient to support a finding that Officer Simmons acted recklessly during his response to the armed-robbery call. According to the majority opinion, Officer Simmons: (1) did not slow his speed below the posted speed limit to compensate for the wet conditions; (2) did not use his patrol car's overhead lights and siren; and (3) did not maintain visual contact with the road as

---

[1] *Martin* interpreted the statutory predecessor to Texas Transportation Code section 546.005. *See Martin*, 971 S.W.2d at 428-30. Like the current version of section 546.005, the statute analyzed in *Martin* stated that the driver of an emergency vehicle is not protected "from the consequences of his reckless disregard for the safety of others." *See* Act of June 5, 1947, 50th Leg., R.S., ch. 421, § 24, 1947 Tex. Gen. Laws 967, 970 (Tex. Rev. Civ. Stat. Ann. art. 6701d, § 24(e)), *codified and repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, sec. 546.005, 1995 Tex. Gen. Laws 1025, 1647 (codification), 1871 (repealer); Tex. Civ. Prac. & Rem. Code § 546.005(2).

he approached the intersection. In my view, the record does not support the majority's holding.

The terms "conscious indifference" and "reckless disregard" are not defined, and therefore we afford them their ordinary meaning. *See* Tex. Gov't Code § 311.011(a) (Code Construction Act); *Hartman*, 201 S.W.3d at 672 n.19; *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 99 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 410-11 (Tex. App.—Fort Worth 2006, pet. denied). In defining these terms, the Supreme Court of Texas has stated that "[t]o recover damages resulting from the emergency operation of an emergency vehicle, a plaintiff must show that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury." *Martin*, 971 S.W.2d at 429-30. As the supreme court stated in *Martin*, the relevant standard imposes a *duty* to drive with due regard for others by avoiding negligent behavior, but it only imposes *liability* for reckless conduct. *Id*. at 431 (emphasis in original). More recently, the supreme court has stated that the terms "conscious indifference" and "reckless disregard" "require proof that a party knew the relevant facts but did not care about the result." *Hartman*, 201 S.W.3d at 672 n.19. Significantly, this standard "requires a showing of more than a momentary judgment lapse." *Martin*, 971 S.W.2d at 430; *see also Quested*, 440 S.W.3d at 285; *Perez v. Webb County*, 511 S.W.3d 233 (Tex. App.—San Antonio 2015, pet. denied); *Kuhn*, 260 S.W.3d at 99. Though a plaintiff need present only *some* evidence of recklessness to create a genuine issue of material fact,[2] the evidence offered must show that the emergency responder knew or should have known that his or her conduct posed a *high degree* of risk of *serious injury*, and that the official simply *did not care* about the result. This is a

---

[2] *See Hartman*, 201 S.W.3d at 673.

5

materially and substantively higher bar than mere negligence. *See Martin*, 971 S.W.2d at 430.[3]

## A.    Lights and siren

The majority's reliance on the assertion that Officer Simmons did not use his patrol car's lights and siren to support a potential recklessness finding is problematic for more than one reason.[4]    To begin with, the en banc majority reverses the trial court's judgment based in part on a contention Gomez never advanced below.    Gomez did not contend in her response to the City's plea that Officer Simmons was reckless because he failed to activate his overhead lights or siren.    Although Gomez cited evidence that Officer Simmons did not activate his lights, she never asserted that his failure to do so constituted recklessness or established a fact issue under the emergency response exception.    As Gomez did not advocate that position to the trial court, we should not rely upon it to reverse the judgment.    *See* Tex. R. App. P. 33.1(a); *Murphy v. City of Galveston*, 557 S.W.3d 235, 244 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (refusing to consider on appeal argument not advanced in response to city's plea to the jurisdiction).

In any event, the larger problem I see with the en banc majority's rationale is that responding without activating the patrol vehicle's lights and siren simply is not reckless conduct given the evidence in our record concerning procedures for responding to "priority two" calls.    Officer Simmons and Sergeant Jefferson both

---

[3] In support of its definition of "recklessness," the supreme court in *Martin* cited its decision in *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322 (Tex. 1993).    In *Alexander*, the court discussed at length the factors elevating gross negligence from ordinary negligence, which include in general terms an extreme risk component and a subjective intent component.    *Id*. at 326.

[4] It is undisputed that Officer Simmons did not activate his vehicle's siren; it is disputed whether he activated the overhead lights.

6

explained that "priority two" calls deal mainly with in-progress property crimes or a threat to human welfare and assume an in-progress event or one that has recently occurred, or that a response to the scene is "urgent." As both officers stated, the standard response to priority two calls is to "run silent without red lights and siren." The City also attached HPD General Order #600-01, which confirms that the standard response to priority two calls is without lights and siren.[5] Gomez presented no controverting evidence, expert or otherwise, that it is reckless for an officer to respond to a priority two call without activating the patrol vehicle's overhead lights or siren even though responding in that manner is standard HPD procedure. We cannot rely upon the presumed fact that Officer Simmons's overhead lights were not activated to reverse on recklessness grounds because the record demonstrates conclusively that not activating visible signals in this circumstance complies with department policy. If a responding officer is permitted under HPD protocol to respond to a priority two call without activating overhead lights or sirens, then responding to the call in that manner cannot be reckless or provide any support for a recklessness finding as a matter of law.[6] Accepting the majority's view will potentially produce absurd results. For example, insofar as use of audible or visual signals are concerned, emergency vehicle operators engaging in conduct permitted by Transportation Code section 546.001 are required by statute to act "in accordance with policies of the department or the local

---

[5] If the situation clearly warrants it, the officer has discretion to activate the lights or siren but must so notify the dispatcher.

[6] Analysis of the emergency response exception is distinct from the good faith test for official immunity, so whether or not Officer Simmons's affidavit actually assumed that his overhead lights were not activated for purposes of a risk/need evaluation is irrelevant. Gomez presented evidence that Officer Simmons's lights were not on when the accident occurred. To analyze recklessness under section 101.055(2), we accept the plaintiff's facts as true and evaluate whether they create a genuine issue of material fact on recklessness. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-28 (Tex. 2004).

7

government that employs the operator." Tex. Transp. Code § 546.003.[7]  Acting in accordance with department policy as required by law is not reckless.

## B.    Visual contact with the road

As additional support for reversing the judgment, the majority states that Officer Simmons did "not maintain visual contact with the road as he approached the intersection."  This conduct is not reckless either because Gomez presented no evidence that it was consciously indifferent to her or other motorists under the circumstances.  According to the record, as Officer Simmons drove south on Lockwood, the road was wet but traffic was moderate, he was careful to watch for other drivers, he observed cross traffic on Crosstimbers without obstruction or impediment, and he did not exceed the speed limit.   The traffic light was green as he approached the Crosstimbers intersection.  While the light was green, Officer Simmons looked to his police radio to increase the volume.  The light changed to yellow and he immediately applied his brakes before entering the intersection.

With her response to the City's plea, Gomez presented the deposition excerpts of Officer Simmons, Sergeant Isaac Jefferson, and Sergeant Connie Park.  None of these witnesses, however, testified that it would be reckless or consciously indifferent to other motorists for an officer responding to an emergency, and approaching an intersection with a green traffic light, to momentarily look at the police radio knob to increase the volume.  Sergeants Jefferson and Park were not even asked a question on that topic.  When Officer Simmons looked up, the light changed to yellow and he stopped immediately rather than proceeding through the

---

[7] The full text of section 546.003 provides:  "Except as provided by Section 546.004, the operator of an authorized emergency vehicle engaging in conduct permitted by Section 546.001 shall use, at the discretion of the operator in accordance with policies of the department or the local government that employs the operator, audible or visual signals that meet the pertinent requirements of Sections 547.305 and 547.702."

8

intersection. Gomez presented no evidence controverting the officer's affidavit and deposition testimony that the light ahead of him was green when he briefly looked down at his police radio. I question whether the officer's conduct was even a failure to exercise ordinary care, but assuming as much it certainly was not consciously indifferent. At most, this is precisely the type of "momentary judgment lapse" that the emergency response exception protects from suit. *See City of Houston v. Davis*, No. 01-13-00600-CV, 2014 WL 1678907, at *6 (Tex. App.—Houston [1st Dist.] Apr. 24, 2014, pet. denied) (mem. op.); *Kuhn*, 260 S.W.3d at 99.

## C. Rate of speed

What we are left with is the officer's rate of speed. According to the en banc majority, Officer Simmons's decision not to slow below the posted speed limit to compensate for the wet conditions contributes to and, along with the other facts discussed above, may support a potential recklessness finding. Again, I respectfully disagree. Officer Simmons was not exceeding the speed limit as he approached the intersection, and he checked traffic before entering the intersection and saw no vehicles coming westbound. He applied his brakes immediately upon seeing the yellow light. Gomez asserts that Officer Simmons was driving too fast to stop before entering the intersection, but she presented no evidence of his speed at the relevant time or that Simmons knew or should have known that his rate of speed, though not exceeding the speed limit, nonetheless presented a high degree of risk of serious injury or indicated that he simply did not care about other motorists—as is required to raise a fact issue on recklessness. She presented no expert testimony, and none of the officer deposition excerpts attached to her response states such an opinion. Sergeant Park said that it is not protocol for a responding officer to stop at an intersection if the traffic light is yellow, and the

9

sergeant acknowledged the unremarkable proposition that that officers responding to an emergency are supposed to drive at a "safe rate of speed where you can stop." One fact not included in Officer Simmons's affidavit but acknowledged in his deposition is that he was not issued a citation for the accident, but later received a letter of reprimand stating that he was at fault.[8] None of this constitutes evidence that Officer Simmons knew or should have known that driving at the speed limit in response to an emergency, even in wet conditions but with moderate traffic on Christmas Eve morning, posed a high degree of risk of serious injury to others but that he just did not care.

## D. Gomez's evidence shows at most negligent, not reckless, conduct

The supreme court has said that the applicable standard under Civil Practice and Remedies Code section 101.055(2) requires a plaintiff to show that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury, but did not care about the result. *Hartman*, 201 S.W.3d at 672 n.19; *Martin*, 971 S.W.2d at 429-30. I fear the en banc majority opinion collapses the critical distinction between negligence and recklessness. *See Perez*, 511 S.W.3d at 241-42 (Barnard, J., concurring) (concluding plaintiff's evidence raised fact question on negligence, but not recklessness); *cf. Martin*, 971 S.W.2d at 430 (noting "reckless disregard" test under Transportation Code not satisfied with proof of ordinary negligence or momentary lapses of judgment). The result exposes the City to suit and potential liability based on at most, and on this record, an officer's negligence. Here, indulging all material fact disputes in

---

[8] The letter is not in our record and Officer Simmons did not contest that he was at fault. At most, such a letter of reprimand may support negligence, not recklessness. *See City of Arlington v. Barnes*, No. 02-07-00249-CV, 2008 WL 820385, at *4 (Tex. App.—Fort Worth Mar. 27, 2008, pet. denied) (mem. op.). Because the letter is not in our record, it is unknown why the reprimand issued or whether the letter detailed circumstances that may support a recklessness finding.

10

Gomez's favor, no evidence shows that Officer Simmons knew or should have known that the conduct the majority cites posed a high degree of risk of serious injury, but did not care what happened to Gomez or other drivers. *See Quested*, 440 S.W.3d at 286; *Davis*, 2014 WL 1678907, at \*6; *City of San Antonio v. Riley*, No. 04-09-00162-CV, 2009 WL 2045231, at \*2 (Tex. App.—San Antonio July 15, 2009, no pet.) (mem. op.) (plaintiff presented no evidence of recklessness when affidavit describing ambulance actions that caused wreck amounted only to negligent conduct; plaintiff presented no evidence of officer's conscious indifference); *Pakdimounivong*, 219 S.W.3d at 410-12 (holding that officers' actions were not taken with conscious indifference or reckless disregard for safety of deceased when no evidence showed that officers did not care what happened to deceased). The en banc majority opinion could be read to mean that a scintilla of evidence of negligence is sufficient to raise a fact issue on recklessness, which is clearly contrary to supreme court precedent. This accident resulted from at most momentary negligence, not recklessness or conscious indifference.

E.    **Emergency response**

Gomez asserts in our court, as she asserted in the trial court, that an emergency situation did not exist at the time of the accident, and for that reason the TTCA's emergency response exception in section 101.055(2) does not apply. The TTCA does not define the terms "emergency call" or "emergency situation," but Texas courts have interpreted the term "emergency" broadly. *See*, *e.g.*, *Hartman*, 201 S.W.3d at 672 (concluding that section 101.055(2) applied to a suit involving city's reaction to roadway flooding); *Little*, 259 S.W.3d at 237-39 (call to assist with a wanted person considered an emergency); *Pakdimounivong*, 219 S.W.3d at 410-11 (officers were responding to an emergency situation in which suspect in patrol car tried to escape through back window); *see also Jefferson County v.*

11

*Hudson*, No. 09-11-00168-CV, 2011 WL 3925724, at \*3 (Tex. App.—Beaumont Aug. 25, 2011, no pet.) (mem. op.) ("emergency" as used in section 101.055 "refers to unforeseen circumstances that call for immediate action").

The majority opinion does not address the issue. I would reject Gomez's argument because the City presented evidence that Officer Simmons responded to an emergency call, and Gomez presented no controverting evidence on that point. For example, the affidavits filed with the City's plea establish that Officer Simmons received a "priority one" dispatch report of a robbery in progress, which was reduced to a "priority two" due to rainy weather conditions. Officers Simmons and Jefferson both stated that the priority two dispatch to which Officer Simmons responded was an emergency. In response to the plea, Gomez offered no evidence to controvert the City's proof that Officer Simmons was responding to an emergency call. Therefore, the evidence is conclusive that Officer Simmons was responding to an emergency. *See*, *e.g.*, *Hartman*, 201 S.W.3d at 672; *Spears*, 2018 WL 4571841, at \*4-5 (priority two response presents an emergency situation; claimant failed to raise fact issue that officer was responding to emergency at time of collision); *Galveston Cty. Health Dist. v. Hanley*, No. 01-14-00166-CV, 2014 WL 6853608, at \*3 (Tex. App.—Houston [1st Dist.] Dec. 4, 2014, no pet.) (mem. op.) (holding plaintiff failed to create a fact issue that ambulance was responding to emergency).

Finally, Gomez argues in her appellate brief that the City failed to establish that Officer Simmons was responding to an emergency call because the affidavits offered in support of that proposition are substantively defective. In particular, Gomez contends that Sergeant Jefferson's affidavit, which states that Officer Simmons's overhead lights were activated, conflicts with the accident report, which states that they were not. Based on the accident report, Gomez says,

12

Sergeant Jefferson's affidavit is legally insufficient because it assumes facts that vary from the actual facts.

Gomez's criticism of Sergeant Jefferson's affidavit does not render it substantively defective. Rather, the affidavit and accident report differ on a material fact, which, as stated, must be (and has been) construed in Gomez's favor. In a final challenge to all three officers' affidavits, Gomez contends that each merely assumes an emergency situation existed, but that their assumptions are not supported by the "CFS call slip" report relating to this incident. Gomez's argument, however, relies on her unsupported personal interpretation of the report and its codes—as opposed to expert testimony—that in turn is based on information outside the record, which we cannot consider. *See Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 210-11 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

For these reasons, the en banc court having granted the City's motion for rehearing en banc, I would affirm the trial court's judgment.

/s/    Kevin Jewell
        Justice

Chief Justice Frost authored the En Banc Majority Opinion, in which Justices Christopher, Bourliot, Zimmerer, Hassan, and Poissant joined. Justice Jewell authored an En Banc Dissenting Opinion, in which Justices Wise and Spain joined.

13